NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JERAMIE L. HARRIS | Crim. Action No. 19-470 (RK)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon Defendant Jeramie L. Harris's ("Defendant") Third Motion to Modify the Conditions of Supervised Release. ("Motion," ECF No. 57.) The Government opposed the Motion ("Opp.," ECF No. 58), and Defendant replied ("Reply," ECF No. 59.) After careful consideration of the parties' submissions and for the reasons stated below, the Motion is **DENIED**.

**I.    BACKGROUND**

    Defendant is currently serving a 63-month term of supervised release subject to home incarceration[1] following his early compassionate release from prison due to serious health complications. (ECF No. 53.) According to his mother, Defendant, who is currently 40 years-old, has been "sickly" since birth. (PSR at 2, ¶ 92.) His more-serious diagnoses include systolic heart failure, seizures, kidney disease, and Type I diabetes. (*Id.* ¶¶ 92–93, 95.) He suffered a mild heart attack in 2013, suffered a stroke in 2015, and had surgery to remove a clot in his brain that same year. (*Id.*) Despite his health complications, the Presentence Investigation Report ("PSR") indicates that in 2019, law enforcement observed Defendant residing at what the PSR refers to as a drug "stash/mill" in Neptune Township. (*Id.* ¶ 27.) At the time, law enforcement was

---

[1] As the United States Probation Office conveyed to defense counsel, Defendant's condition of home incarceration is "not designed to have regular exceptions outside of medical necessities." (Motion at 3.)

investigating a large heroin and fentanyl drug trafficking organization operating throughout New Jersey. (*Id.* ¶ 25.) On May 1, 2019, they conducted a motor vehicle stop of Defendant's vehicle and observed a large kilogram press (a device typically used to package drugs) in the back of Defendant's vehicle.[2] (*Id.* ¶ 28.) Defendant was subsequently arrested and informed law enforcement that he resided at the drug mill by himself and that there was a firearm and cocaine at the location. (*Id.* ¶ 29.)

That same day, law enforcement conducted a search of the drug mill and recovered a bag containing a .22 caliber six-shot revolver loaded with six rounds of ammunition, a metal spoon, and clear zip-lock baggies. (*Id.* ¶ 30.) They also recovered a clear bag containing approximately 25 grams of a substance that field-tested positive for cocaine, as well as a box containing rubber bands, a digital scale, and ten glassine bags of a substance that field-tested positive for heroin. (*Id.* ¶ 31.)

On July 8, 2019, Defendant—a career offender[3] under United States Sentencing Guidelines § 4B1.1—pled guilty to three counts: (i) possession with intent to distribute cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C); (ii) being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (iii) possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (ECF No. 17; *see* ECF No. 15.) While the Sentencing Guidelines contemplated an incarceration range for Defendant of 262 to 327 months (*see* PSR ¶ 114), Defendant entered into a plea agreement where the parties agreed that a sentence between 84 and 188 months would be reasonable (ECF

---

[2] Law enforcement also recovered a box of narcotic packaging materials from the vehicle. (PSR ¶ 29.)

[3] As for Defendant's prior crimes, the PSR indicates Defendant pled guilty to eluding law enforcement and unlawful possession of a weapon (a .380 caliber semi-automatic firearm) in 2007, manufacturing/distributing/dispensing oxycodone in 2013, and manufacturing/distributing/dispensing heroin in 2014. (PSR ¶¶ 70–73.)

No. 17 at 9). On November 14, 2019, the Honorable Freda L. Wolfson, U.S.D.J. (ret.), sentenced Defendant to 144 months' incarceration followed by a five-year term of supervised release. (ECF No. 26.)

Four months after his voluntary surrender on February 19, 2020 (ECF No. 29), Defendant filed his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 30.) Defendant argued that he was terminally-ill with end-stage kidney failure that required hemodialysis and that his diabetes and high-risk of death due to the COVID-19 pandemic were extraordinary and compelling reasons warranting his early release. (*Id.*) The Government opposed the motion. (ECF No. 33.) On August 25, 2021, Judge Wolfson denied Defendant's motion. (ECF No. 35.) She found that Defendant's end-stage kidney failure—which made his kidneys "essentially nonfunctional"—was an extraordinary and compelling medical reason for release. (*Id.* at 5–6.) Nonetheless, Judge Wolfson's examination of the § 3553(a) factors weighed against release; notably, she found that "although Defendant's health conditions have progressively worsened for many years, they have never deterred him from engaging in dangerous criminal activity." (*Id.* at 8.)

On January 2, 2024, Defendant filed a *pro se* second motion for compassionate release. (ECF No. 36.) The case was reassigned to the Undersigned that same week. (ECF No. 37.) The *pro se* motion was later supplemented with a brief filed by Defendant's counsel. (*See* ECF No. 44.) Defendant alleged worsening health conditions relating to his (i) end-stage kidney failure for which he required hemodialysis through an arteriovenous fistula, (ii) diabetes, (iii) congestive heart failure, (iv) coronary artery disease, (v) seizure disorder, (vi) hypertension, (vii) secondary hyperparathyroidism, and (viii) history of stroke. (*Id.* at 3.) This time, the Government consented to Defendant's motion "contingent upon the imposition of a five-year term of supervised release

with the special condition of home incarceration." (ECF No. 49.) Following a hearing on January 16, 2025, the Court issued a Consent Order that reduced Defendant's term of imprisonment to time served and ordered a "special term" of 63 months of supervised release with the condition of home incarceration. (ECF No. 53.)

To date, the Court has already thrice modified Defendant's conditions of supervised release. *First,* on January 27, 2025, the Court permitted Defendant to go to the Social Security and Medicaid offices to obtain medical insurance and disability benefits. (ECF No. 54.) *Second*, on March 17, 2025, the Court ordered Defendant to submit to mental health treatment. (ECF No. 56.) *Third*, on May 5, 2025, the Court permitted Defendant to go grocery shopping "one time."[4] (ECF No. 61.) Each of these modifications were made with the Government's consent. (*See* ECF Nos. 54, 56, 61.)

Unlike the discrete requests for modification granted by the Court to date, Defendant has now filed the present Motion seeking a significant change in his conditions of supervised release. (*See* Motion.) Defendant asks the Court to change his condition of home incarceration—which the Government hinged their consent to Defendant's early release on—to location monitoring with home detention. (*Id.* at 1.) Defendant, who resides with his mother and her boyfriend in a one-bedroom apartment, alleges facing a number of difficulties in the less than three months since his release: (i) difficulty accessing treatment, medication, and medical specialists; (ii) difficulty accessing and affording the "specific fresh fruits and vegetables" required for managing his serious health conditions; and (iii) difficulty in getting sufficient exercise while "confined to his small apartment." (*Id.* at 1–3.) Defendant asks the Court to relax his condition of home incarceration so

---

[4] Defendant filed the present Motion *before* he filed his motion to go to the grocery store one time. (*See* ECF Nos. 57, 60.) Thus, Defendant's present Motion is technically his third *motion* for modification, but it would be the fourth *modification* to his conditions of release if granted by the Court.

4

that he can go to the grocery store and the gym, as well as attempt to find employment to help his family "with higher living expenses now that he is home." (*Id.* at 3.) The United States Probation Office indicated it was not opposed to the Motion. However, the Government opposes the Motion on the basis that Defendant's dangerousness is properly mitigated by his current condition of home incarceration. (Opp. at 1, 3.)

## II.     LEGAL STANDARD

Section 3583 of Title 18 of the United States Code permits a sentencing court to "modify, reduce, or enlarge the conditions of supervised release[] at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). A sentencing court has "broad discretion" under § 3583(e)(2). *United States v. D'Ambrosio*, 105 F.4th 533, 539 (3d Cir. 2024). However, before modifying the conditions of a defendant's supervised release, § 3583(e) directs a court to first consider the following § 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> [. . .]
>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> [. . .]
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>>
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have

      yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see* 18 U.S.C. § 3583(e). The court need not make "specific findings of fact" with respect to each factor; rather, "a statement that the district court has considered the statutory factors is sufficient." *United States v. Cristello*, No. 17-00269, 2025 WL 89904, at *3 (D.N.J. Jan. 14, 2025) (quoting *United States v. Melvin*, 978 F.3d 49, 52–53 (3d Cir. 2020)) (cleaned up).

## III. <u>DISCUSSION</u>[5]

    The Court has considered the relevant § 3553(a) factors and finds within its discretion that Defendant's current condition of home incarceration does not impose a "greater deprivation of

---

[5] While Federal Rule of Criminal Procedure ("Rule") 32.1(c)(1) directs a court to hold a hearing prior to modifying the conditions of a defendant's supervised release, the Court here declines to modify Defendant's

6

liberty than is reasonably necessary to deter future criminal conduct, protect the public, and rehabilitate the defendant." *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007) (internal quotation marks omitted). The Court is certainly sympathetic to the multitude of gravely serious health conditions Defendant faces and his difficulties in managing those conditions to date. However, while Defendant explicitly consented to the condition of home incarceration at the time of his early release, he has spent the last four months repeatedly attempting to expand the breadth of that condition. (*See* ECF Nos. 54, 56, 61.) This latest attempt represents an outright rebuke of the condition to which he expressly consented to.

Even though Defendant argues that a particular diet and exercise is medically required for his serious medical conditions (*see* Reply at 1), Defendant "did not provide the District Court with sufficient information to warrant modification of the terms of his supervised release." *Davies*, 746 F. App'x at 89. Defendant did not provide the Court with any medical instructions, reports, or opinions indicating that Defendant is required to be on a certain diet or maintain a certain exercise regime.[6] The closest Defendant comes is through a doctor's note indicating it would be "medically safe" for Defendant to exercise at a gym "with minimal exertion given his long medical history." (Motion Ex. 2.) This does not support a contention that Defendant is *required* to go to the gym or that exercise is necessary for his health conditions. Furthermore, the Motion does not elucidate what Defendant's particular diet requires beyond attaching an e-mail Defendant himself sent to

---

conditions of release, and thus issues this Memorandum Order without holding a hearing. *See* Fed. R. Crim. P. 32.1(c)(1) ("Before modifying the conditions of . . . supervised release, the court must hold a hearing . . ."); *United States v. Insaulgarat*, 280 F. App'x 367, 368 (5th Cir. 2008) ("Pursuant to the plain language of the statute, a hearing is not required if the district court denies a defendant's motion to modify the conditions of supervised release.").

[6] Relatedly, while Defendant notes he wants to seek employment in the trucking industry (Reply at 2), he does not state whether this type of employment would be medically safe. The Court is reasonably skeptical that Defendant would be able to undertake such employment given the seriousness and complexity of his host of medical diagnoses.

counsel explaining the diet in his own words. (Motion at 2.) While the Court does not doubt that Defendant's medical conditions require certain close management, the Court will certainly not grant a modification where there has been no medical evidence submitted regarding what is medically required of Defendant.

Even if Defendant could hypothetically supply supporting medical evidence, it is likely his arguments in favor of modification would still fail. For example, Defendant lives with two caretakers that appear capable of running errands on his behalf. (*See* Motion at 2.) Thus, his arguments regarding needing to go to the grocery store himself are tenuous, irrespective of any medical evidence he could hypothetically supply. What's more, and most significant to the § 3553(a) factors, the Court will not modify Defendant's current home incarceration condition to location monitoring with home detention given the nature and circumstances of his offense and the need to protect the public from further crime. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(C).

To start, the nature and circumstances of Defendant's offense, which involved both drugs—namely, cocaine and heroin—and firearms, weigh against modification. (PSR ¶¶ 30–31.) Defendant was not only living at a drug mill with a loaded firearm, but he was also seemingly involved with a sophisticated drug trafficking organization that dealt fentanyl. (*Id.* ¶¶ 25, 29); *see United States v. Terry*, No. 16-210, 2021 WL 1345873, at *1 (D.N.J. Apr. 12, 2021) ("The nature of the offense, involving drugs and a loaded gun (but no acts of violence), suggested the need for punishment and deterrence."). Section 3553(a)(1) weighs against modifying the conditions of his release.[7]

---

[7] With respect to considering the "history and characteristics" of Defendant, *see* § 3553(a)(1), the Court acknowledges that Defendant has shown some signs of rehabilitation while incarcerated by working as a hospital companion for 16 months to inmates with substantial medical and caretaking needs. (ECF No. 44 at 8.) Nonetheless, this work alone, while admirable, does not convince the Court that Defendant has moved beyond criminality, particularly given his lengthy criminal history prior to the instant offense.

With respect to the protection of the public under § 3553(a)(2)(C), the Court is unpersuaded that Defendant's current serious medical conditions would prevent him from committing further crime. Defendant is a categorical career offender under the Sentencing Guidelines. (PSR ¶ 47.) As Judge Wolfson summarized in her decision denying Defendant's first motion for compassionate release:

> When he was arrested in 2019, Defendant was living in a drug mill, storing and packaging narcotics with a loaded gun, despite suffering from at least stage four kidney disease and diabetes. Defendant also pled guilty to selling oxycodone in 2013 despite his heart attack that year, and to selling heroin in 2015 despite his hospitalization and stroke/seizure then. This suggests that, although Defendant's health conditions have progressively worsened for many years, they have never deterred him from engaging in dangerous criminal activity. *See, e.g.*, PSR, ¶¶ 70-73, 75. And, indeed, Defendant's crimes of conviction continue to be deeply troubling.

(ECF No. 35 at 8.) Given that Defendant is purportedly healthy enough to seek and undertake employment, any argument that he is too *unhealthy* to commit further crimes defies logic. Indeed, Defendant himself "admitted to supporting himself through the means of the streets" in the past. (PSR ¶ 107.) Consideration of all of the relevant § 3553(a) factors leads the Court to be confident that Defendant's current condition of home incarceration is "not greater than necessary." *See United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011) ("§ 3553(a) also requires parsimony—that '[t]he court impose a sentence sufficient, but not greater than necessary.'" (quoting 18 U.S.C. § 3553(a))).

It bears acknowledging that Defendant, despite being a career offender, has repeatedly and generously received the benefit of sentencing leniency. Defendant was initially facing a staggering Guidelines sentence of 262 to 327 months' incarceration. (*See* PSR ¶ 114.) Yet, through a plea agreement with the Government, the proposed incarceration range was significantly reduced to between 84 and 188 months. (ECF No. 17 at 9.) Judge Wolfson sentenced Defendant to 144 months' incarceration, right in the middle of that reduced range. (ECF No. 26.) Defendant then

9

went on to serve *less than half* of that incarceration term before this Court granted his early release. (*See* ECF No. 49 at 3 (representing that in January 2025 Defendant had served approximately 48% of his incarceration term).) In the four months since his release, he has filed serial applications for modification and has thrice been afforded the benefit of those discrete modifications. (*See* ECF Nos. 54, 56, 61.)

Therefore, **IT IS** on this 15th day of May, 2025,

**ORDERED** that Defendant's Motion to Modify the Conditions of Supervised Release (ECF No. 57) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court **TERMINATE** the Motion pending at ECF No. 57.

---
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**